No. 25-60348

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

NETCHOICE, L.L.C.,
*Plaintiff-Appellee,*

*v.*

LYNN FITCH, IN HER OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF MISSISSIPPI,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:24-cv-170-HSO-BWR

**REPLY SUPPORTING OPPOSED MOTION TO STAY THE DISTRICT COURT'S
PRELIMINARY-INJUNCTION ORDER PENDING RESOLUTION OF APPEAL**

LYNN FITCH
  *Attorney General*
SCOTT G. STEWART
  *Solicitor General*
JUSTIN L. MATHENY
ANTHONY M. SHULTS
  *Deputy Solicitors General*
WILSON D. MINOR
  *Special Assistant Attorney General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
E-mail: scott.stewart@ago.ms.gov

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

                                                                                         **Page**

TABLE OF AUTHORITIES ................................................................ ii

ARGUMENT ..................................................................................... 1

I.    The State Will Likely Succeed On The Merits ............................... 1

II.   The Equities Favor A Stay ............................................................ 10

CONCLUSION ................................................................................ 12

CERTIFICATE OF SERVICE ......................................................... 13

CERTIFICATE OF COMPLIANCE ................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brown v. Entertainment Merchants Ass'n*,
 564 U.S. 786 (2011) .................................................................................. 4, 5, 7

*CCIA v. Paxton*,
 747 F. Supp. 3d 1011 (W.D. Tex. 2024) ............................................................ 8

*DHS v. D.V.D.*,
 606 U.S. — (July 3, 2025) ................................................................................ 3

*Doe v. MySpace, Inc.*,
 528 F.3d 413 (5th Cir. 2008) ........................................................................... 10

*Free Speech Coalition, Inc. v. Paxton*,
 606 U.S. — (June 27, 2025) .................................................................. 3-6, 8, 10

*Free Speech Coalition, Inc. v. Paxton*,
 95 F.4th 263 (5th Cir. 2024) ........................................................................... 10

*NetChoice, LLC v. Fitch*,
 134 F.4th 799 (5th Cir. 2025) ....................................................................... 1, 2

**Constitutional Provision**

U.S. Const. amend. I ............................................................................ 1, 3-6, 9, 10

**Statutes**

47 U.S.C. § 230 ................................................................................................ 9, 10

2024 H.B. 1126 ................................................................................................ 1-11

**Other Authorities**

Instagram,
　　Confirming your age on Instagram ...................................................... 8

Instagram,
　　How does video selfie age verification work on Instagram? ................ 6

# ARGUMENT

This Court should stay the injunction. NetChoice's arguments fail.

## I. The State Will Likely Succeed On The Merits.

This Court will likely reject the injunction on the merits. Mot. 13-20 (CA5 Dkt. 8-1); *contra* Opp. 6-22 (CA5 Dkt. 15-1).

**A.** The injunction defies the mandate in *NetChoice, LLC v. Fitch*, 134 F.4th 799 (5th Cir. 2025). Mot. 13-14; *contra* Opp. 17-20.

NetChoice makes no argument disputing that "the district court reinstated the injunction that *Fitch* vacated," Mot. 14 (emphasis omitted), but claims that the court ruled properly because NetChoice "add[ed] as-applied claims" and "provide[d] more information about whether the Act applies to" other platforms. Opp. 17, 18 (cleaned up).

Neither point withstands scrutiny. First, although NetChoice added "as-applied claims," the district court granted the same *facial* relief that *Fitch* vacated—an injunction blocking the Act in *all applications* to *all* covered members—without ever determining what those applications are. Mot. 13-14. That is "facial" relief. *Fitch*, 134 F.4th at 803, 807-09.

Second, in seeking that facial relief NetChoice did not provide the information that *Fitch* required—and in issuing that relief the district court did not do what *Fitch* ordered. *Fitch* ordered the district court to "determine" "the 'commercially reasonable efforts'" and "the Act's requirements" for each covered platform. 134 F.4th at 809. The district court could not rule that the Act violates the First Amendment without

knowing what the Act requires each platform to do and how (if at all) those actions will affect speech rights on that platform. *See ibid.*; Mot. 9-11. Consider: How could a court grant relief benefiting Instagram on the age-verification provision when Instagram *already* verifies age and NetChoice has not shown how that provision would burden speech? How could a court grant relief benefiting Nextdoor on the parental-consent provision when NetChoice has not shown a burden on speech from requiring parents (of Nextdoor's relatively few minor users, Pai Dec. ¶¶ 16-19) to make a phone call or respond to an email, § 4(2)? How could a court grant relief benefiting *any* NetChoice member on the strategy provision when NetChoice has not shown whether it would be "commercially reasonable," § 6—and a violation of speech rights—for any member to simply provide a list of harm-mitigation resources (support groups, for example) to minors victimized on the member's platform by sex trafficking, sexual abuse, harassment, and other listed harms? NetChoice provided none of this information. Instead, on remand it added more information on why 8 of its members are covered and 32 are not. Mot. 12; Dkt. 54 at 13. But (aside from new member Reddit) the district court *already knew* which NetChoice member platforms the Act covers— NetChoice named them *the day it filed this case*. Mot. 7, 11. What that court did not know—and still does not know, because NetChoice refused to make the "factual" showing that *Fitch* required, 134 F.4th at 809—is what would constitute "commercially reasonable" actions to verify age,

2

obtain parental consent, or adopt a harm-mitigation strategy for any NetChoice member. Mot. 12. NetChoice still resists the need to make that showing. Opp. 18-19. That just confirms that its position—embraced by the district court—defies this Court's mandate.

NetChoice claims that requiring this factual showing would lead to "absurdities." Opp. 19-20. But it points only to a hypothetical law *directly regulating protected speech* based on its *political content*, Opp. 19—an easy First Amendment case. The Act here is nothing like that: it regulates predatory conduct, not protected speech. Mot. 16. NetChoice also says that *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. — (June 27, 2025), shows that "courts can rule on the constitutionality of state laws requiring 'commercially reasonable method[s]' without an exhaustive inventory of what is 'commercially reasonable' for every website." Opp. 19. But *FSC rejected* a facial claim. *FSC* Op. 4, 17 n.7. Because a plaintiff can win such a claim only if it carries a heavy "burden," Mot. 8, *rejecting* a facial claim without "an exhaustive inventory" can be easy. *Crediting* such a claim requires much more and is much harder. Mot. 8-11.

The Supreme Court just reaffirmed that a litigant that has prevailed in the appellate process "should not be required to go through that entire process again to obtain execution of the judgment" it won on appeal. *DHS v. D.V.D.*, 606 U.S. —, slip op. 2 (July 3, 2025). The injunction does not respect that teaching. A stay is warranted.

**B.** The Act satisfies the First Amendment. Mot. 15-20. NetChoice does not dispute that there is no basis for blocking most of the provisions the district court enjoined. Mot. 20 (addressing §§ 1, 2, 3, 5, and 7). NetChoice's arguments (Opp. 6-16, 20-21) fail.

1. The Act must satisfy at most intermediate scrutiny. Mot. 15-17. NetChoice's arguments for strict scrutiny (Opp. 6-13, 20-21) fail.

Start with the claim that NetChoice shunts to the end of its First Amendment argument: that *FSC* does not apply here. Opp. 20-21. NetChoice claims that, unlike the law in *FSC*, the Act here "directly targets"—and thus "directly regulate[s]"—"fully protected speech." Opp. 20 (cleaned up). That is wrong. Indeed, it defies credulity to claim that the Act directly targets or directly regulates "creative writing on Dreamwidth," "petitioning ... elected representatives on X," or "sharing vacation photos" on Facebook, Opp. 7 (cleaned up): the Act leaves people free to do all those things however they wish. Rather, the Act targets and regulates what NetChoice concedes is "unlawful conduct" (Opp. 11)—like sexual abuse, harassment, and trafficking. Sexually abusing, harassing, and trafficking children are *not* "fully protected speech." Opp. 20. Yet they occur on covered platforms, which is why the Act regulates those platforms. These points show why strict scrutiny does not apply and why *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011), is inapposite. *Contra* Opp. 20-21. *Brown* struck down a law that barred selling or renting video games (speech) to minors because of the games'

4

violent content. *Id.* at 789, 799-805. That law directly targeted and regulated lawful, protected speech. *Id.* at 790-99. The Act here does not target or regulate any protected speech and instead targets illegal and unprotected conduct that States can regulate. NetChoice says that *FSC* "is limited to the unique context of regulating pornography." Opp. 16; *see* Opp. 1, 20. But *FSC* never says it is so limited, it applies bedrock First Amendment principles, and it addresses a law that matches the Act here in all ways that matter: both that law and the Act address access to platforms that host both protected speech and unprotected speech or conduct. If anything, the case for lower scrutiny is *stronger* here: the law in *FSC* targeted content (material obscene only to minors) that is protected for adults, *FSC* Op. 18; the Act targets conduct (like sexual abuse and child trafficking) that is protected for no one.

Next, take NetChoice's defense of the district court's reasoning. Opp. 12-13. NetChoice claims that the Act faces strict scrutiny because its coverage definition is content-based—that definition "treat[s]" online platforms" "differently based upon the nature of the material they disseminate." Opp. 12. This argument is flawed. First, the coverage definition is not content-based. Coverage turns on where *harmful conduct* toward minors online is most likely: the interactive social-media platforms that allow predators to interact with and harm children—something that the Legislature thought relatively unlikely on (for example) LinkedIn and certain news websites. § 3(2)(c)-(d). Coverage

5

does not turn on the ideas discussed, the messages conveyed, or who speaks. Second, as explained, the Act does not "direct[ly] target[ ]" or "ban" "fully protected speech," so strict scrutiny does not apply. *FSC* Op. 20, 23. Indeed, if a content-based coverage definition automatically triggered strict scrutiny, then *FSC* would have applied strict scrutiny. *But see FSC* Op. 28 (H.B. 1181's "content-based restriction does not require strict scrutiny").

Last, take NetChoice's arguments—none of which the district court embraced—for why specific provisions trigger strict scrutiny. Opp. 6-12.

One: NetChoice says that the age-verification provision faces strict scrutiny because it "burdens First Amendment rights to access protected speech." Opp. 6 (cleaned up); *see* Opp. 6-7. *FSC* rejected that argument, ruling that intermediate scrutiny applied to an age-verification law that "burden[ed]" access to speech. *FSC* Op. 18-19. NetChoice suggests that the result should be different here because the Act "target[s] ... fully protected speech." Opp. 7. Again, that is wrong. Mot. 16; *supra* pp. 4-5. NetChoice claims that "just asking for people's birthdays deters users from accessing the websites." Opp. 7. But its cited declaration focuses on the effect of *requiring and verifying government IDs*. Pai Dec. ¶¶ 23, 25-32. The Act does not mandate those things. Indeed, some age-verification methods do not require IDs. *See* Instagram, How does video selfie age verification work on Instagram?, https://bit.ly/4jclTYB (video-selfie age-

verification option that uses AI to estimate age, "can't identify specific people," takes "minutes," and "delete[s] the image").

Two: NetChoice says that the parental-consent provision triggers strict scrutiny under *Brown*. Opp. 7-8. Again: *Brown* applied strict scrutiny to a law because it *banned* access to speech *based on its content*; the Act here at most *burdens* access to speech and does so not based on content but *to address predators*.

Three: NetChoice claims that the strategy provision faces strict scrutiny because it is "a prior restraint" (Opp. 8-10) or requires platforms to "censor[ ]" protected speech (Opp. 10-11). That is wrong. That provision requires platforms to "make commercially reasonable efforts to develop and implement a strategy to prevent or mitigate" a known minor's "exposure to harmful material and other content that promotes or facilitates" certain "harms to minors." § 6(1). Nothing in that text requires or "coerc[es]" platforms to "pre-screen," "monitor[ ]," "block," "censor," not "publish[ ]," or "restrict[ ]" speech. Opp. 8-11. That text allows (for example) a strategy of making available a list of resources for minors victimized by sex trafficking, sexual abuse, harassment, and other listed harms. Such a strategy could "mitigate" minors' exposure to those harms without monitoring or blocking any content. NetChoice says: "It is unclear why the Act would seemingly permit the harms to happen and then require only mitigation." Opp. 9. The Act does not "permit the harms to happen"—it takes measures, including with its age-verification

7

and parental-consent provisions, to stop them (measures that NetChoice has for a year tried to block in every application). The Act just recognizes that some harms will occur and gives platforms the option to mitigate harms after they have occurred. Last, NetChoice says that Texas "acknowledged" that its "substantially similar law requires 'filtering' content." Opp. 9. But unlike the strategy provision, Texas's law *expressly requires* "blocking," "monitoring," and "filtering" content. *CCIA v. Paxton*, 747 F. Supp. 3d 1011, 1023, 1036-38 (W.D. Tex. 2024) (quoting statute).

2. The Act satisfies intermediate scrutiny. Mot. 17-20. NetChoice says that "restricting access to fully protected speech cannot advance governmental interests unrelated to the suppression of free speech." Opp. 16 (cleaned up). That is wrong. The Act affects access to *both* protected speech *and* unprotected (including illegal) conduct, it regulates and targets only the latter (which the State may regulate), and it does that "while at the same time allowing" users to access online platforms after only "modest burden[s]." *FSC* Op. 33; *see* Mot. 19. NetChoice also says that the Act "burdens substantially more speech than necessary." Opp. 16 (cleaned up); *see also* Opp. 7-8. But age verification and parental consent—both "traditional" and "common[ ]" in our society—are "modest burden[s]." *FSC* Op. 32, 33; *see* Mot. 19-20. Indeed, some covered platforms already verify age. *E.g.*, Instagram, Confirming your age on Instagram, https://bit.ly/4keM2H0. Some platforms require far more to create an account than the phone call or email response that satisfies the

Act's parental-consent provision. § 4(2); *see* Pai Dec. ¶¶ 4-5 (Nextdoor requires "real names and addresses" and uses mailings to verify required information). And harm-mitigation duties—like those the strategy provision imposes—are commonplace and not excessive. Mot. 16, 20. Far from regulating "indiscriminately," Opp. 16, moreover, the Act regulates the platforms whose interactive features make them especially attractive to predators who seek to exploit children. Making those platforms address harms to children does not violate the First Amendment.

NetChoice also says that the Act fails strict scrutiny. Opp. 7-8, 11-12, 13-16. That standard does not apply. Mot. 15-17, 19. Again, the Act does not target or ban protected speech: it targets *predators* that use covered platforms to harm minors. Mot. 16, 19.

**C.** NetChoice claims that 47 U.S.C. § 230 preempts the strategy provision. Opp. 21-22. The district court did not reach this claim. Op. 30 n.6. And the claim cannot support the injunction, which blocks much more than the strategy provision. The claim fails anyway. The strategy provision does not "treat[ ]" any online platform "as the publisher or speaker of any information provided by" a third party—or impose "liab[ility]" for good-faith blocking or screening of material—and so it comports with section 230. 47 U.S.C. § 230(c). Although section 230 "immunize[s]" platforms from liability "for harm caused by unremoved speech on their website[s]," it does not immunize platforms when liability is imposed "independently of whether the third-party speech that

9

[platforms] host harms anybody." *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 285 (5th Cir. 2024), *aff'd*, 606 U.S. — (2025). This Court has accordingly held that section 230 does not preempt a Texas law requiring pornographic websites to use age-verification methods to prevent minors from accessing their sites. *Id.* at 266-67, 284-86. Liability under that law is based on "compl[iance] with" that age-verification provision, not on harm from third-party content. *Id.* at 285. Under that holding—ignored by NetChoice—section 230 does not preempt the strategy provision. That provision imposes liability based on whether a covered platform "compl[ies] with" the Act by making commercially reasonable efforts to adopt a harm-mitigation strategy—not based on whether third-party content "harms anybody." *Ibid.*

NetChoice invokes language drawn from *Doe v. MySpace, Inc.*, 528 F.3d 413, 418-20 (5th Cir. 2008). Mot. 21, 22. But MySpace enjoyed immunity where a negligence claim sought to hold it liable for harm caused by third-party content it hosted. 95 F.4th at 285. The strategy provision imposes liability for failing to adopt a strategy—not for harm from third-party content. And again, the provision does not require platforms to "screen[ ]," "monitor[ ]," "filter[ ]," or "block" content, Mot. 22—so NetChoice gets nothing from claims that it requires those things.

## II. The Equities Favor A Stay.

The equities support a stay. Mot. 21-22. NetChoice says that the equities support protecting First Amendment rights, Opp. 22-23, but that

argument falls with NetChoice's merits arguments. NetChoice says that the injunction "does not eliminate all 'efforts to protect minors'" from online harms. Opp. 23. That does little good for children left unprotected by an Act that requires only the efforts that any responsible platform would already make. Mot. 21-22. And because the Act requires only commercially reasonable efforts, Mot. 21, NetChoice's complaints about "compliance costs" ring hollow, Opp. 23. NetChoice claims that the Act might cause one of its members to shut down. Opp. 23. The State showed the folly in that claim, Mot. 21, and NetChoice says nothing to rebut that showing. Last: There should be no forgetting that NetChoice urged the district court to defy this Court's mandate. Mot. 9-12, 13-14, 22. Equity should not condone that tactic.

## CONCLUSION

This Court should stay the preliminary-injunction order.

Respectfully submitted,

LYNN FITCH
  *Attorney General*

*s/ Scott G. Stewart*

SCOTT G. STEWART
  *Solicitor General*
JUSTIN L. MATHENY
ANTHONY M. SHULTS
  *Deputy Solicitors General*
WILSON D. MINOR
  *Special Assistant Attorney General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
E-mail: scott.stewart@ago.ms.gov

*Counsel for Defendant-Appellant*

July 17, 2025

# CERTIFICATE OF SERVICE

I, Scott G. Stewart, hereby certify that this reply has been filed with the Clerk of Court using the Court's electronic filing system, which sent notification of such filing to all counsel of record.

Dated: July 17, 2025

*s/ Scott G. Stewart*
Scott G. Stewart
*Counsel for Defendant-Appellant*

# CERTIFICATE OF COMPLIANCE

This reply complies with the word limitations of Fed. R. App. P. 27(d)(2)(C) because it contains 2584 words, excluding parts exempted by Fed. R. App. P. 32. This reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because its text has been prepared in proportionally spaced typeface, including serifs, using Microsoft Word 2016, in Century Schoolbook 14-point font.

Dated: July 17, 2025

*s/ Scott G. Stewart*
Scott G. Stewart
*Counsel for Defendant-Appellant*